IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHWESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 15-05048-01-CR-SW-MDH |
| ) | |
| JAMES PRYOR, ) | |
| ) | |
| Defendant. ) | |

**REPORT & RECOMMENDATION OF U.S. MAGISTRATE JUDGE**

Pursuant to 28 U.S.C. § 636(b), the above-styled criminal action was referred to the undersigned for preliminary review. Defendant moves to suppress statements and physical evidence seized from Defendant's vehicle on December 1, 2014. (Doc. 18.) On April 19, 2016, the undersigned held a hearing on the instant Motion. (*See* Docs. 22 and 23.) Defendant was present with his attorney, Erica Mynarich. The United States was represented by Josephine Larison. During the hearing, the Court received evidence and heard testimony from Chief Deputy Shayne Simmons of Vernon County, Missouri Sheriff's Office; Sheriff Jason Mosher of the Vernon County, Missouri Sheriff's Office; Detective Tycher Blakely of the Vernon County, Missouri Sheriff's Office;[1] and Deputy Travis Cole of the Vernon County, Missouri Sheriff's Office. After careful review of the evidence and for the reasons set forth below, it is hereby **RECOMMENDED** that Defendant's Motion, (Doc. 18), be **DENIED**.

**I.    Findings of Fact[2]**

---

[1] At the time of the events discussed herein, Det. Blakely was a deputy with the Vernon County Sheriff's Office. As such, he is referred to as Dep. Blakely throughout this Report.

[2] The facts set forth herein are taken from the testimony adduced at the hearing on the instant Motion. The hearing transcript appears as Doc. 23. Neither party moved for the admission of exhibits at the hearing.

In late November or early December 2014, Chief Deputy Shayne Simmons of the Vernon County Sheriff's Office ("VCSO") received information from a confidential informant ("CI") regarding Defendant. Specifically, the CI told Chief Deputy Simmons that he had accompanied an individual to buy drugs from Defendant at Defendant's father's house. The CI further indicated that Defendant was "rolling around selling drugs out of his truck," and that if Defendant's "truck was there, he would be there . . . rolling with dope." VCSO also learned that Defendant drove a grey GMC truck. Previously, this CI had proved to be a reliable source of information for the VCSO. For example, the CI had worked with the VCSO for several years and, during that time, had worn wires to a number of drug transactions. Additionally, the VSCO served search warrants based on information the CI gave that proved to be reliable. As a result, Chief Deputy Simmons believed the information the CI provided in late 2014 regarding Defendant was reliable. In addition to the information from the CI, officers with the VCSO knew Defendant from his time in the small community they patrol and had had cordial interactions with him in the past. In fact, Dep. Cole had known Defendant since elementary school. Further, VCSO officers knew Defendant associated with people involved in illegal drug activity from prior investigations in their community.

On the evening of December 1, 2014, in Vernon County, Missouri in the Western District of Missouri, officers with the VCSO obtained a search warrant to search Defendant's father's home, located at 435 East Pitcher Street, Nevada, Vernon County, Missouri, and vehicles on the property based on information provided by the CI. Vernon County Sheriff Jason Mosher and other VSCO deputies executed the warrant that same day. While there was a car in Defendant's father's yard, it was not the vehicle that belonged to Defendant. Defendant was not at that location, and no methamphetamine was located at the residence during the search.

2

Based on their familiarity with Defendant generally, VCSO officers knew that Defendant frequented the home of his girlfriend. After executing the warrant, Chief Deputy Simmons, Sheriff Mosher, Dep. Blakely, and Dep. Cole drove by Defendant's girlfriend's home located at 514 Maple Street in Nevada, Vernon County, Missouri a few times. Eventually, Chief Deputy Simmons recognized Defendant's vehicle in the driveway of 514 Maple Street and saw Defendant standing next to the open driver's door of his truck. Chief Deputy Simmons, Dep. Blakely, and Dep. Cole exited their police vehicle and walked up the driveway. Sheriff Mosher proceeded to park the police vehicle on the street near the driveway, but did not block the driveway. At this time, all of the VSCO officers were wearing tactical gear typically worn for the execution of search warrants, which included firearms and black uniforms. Though all of the officers had weapons, their guns were holstered when they approached Defendant.

As the officers walked up the driveway, Chief Deputy Simmons said "Hey Mikey," or "Hey Mike" to Defendant.[3] Defendant was still standing in driveway in the opening of the driver's door. Dep. Blakely then asked Defendant if he had anything on his person that the officers needed to know about. Defendant said no, but Dep. Blakely then told Defendant that he was going to pat him down for officer safety to make sure he did not have any weapons or items of that nature. Dep. Blakely then conducted a brief pat-down that did not reveal any weapons or other items. After patting him down, Dep. Blakely asked Defendant if there was anything in his vehicle that the officers needed to know about. Defendant responded that he had a marijuana roach in the console of his truck. At this time, VCSO officers felt they had probable cause to search that area of the vehicle.

Dep. Blakely then circled around to the passenger door to search Defendant's truck. Upon opening the door, he saw a firearm in the passenger's seat beside the center console,

---

[3] Each of the witnesses testified that Defendant usually goes by Mike or Mikey Pryor.

money on the seat in the driver's side, and the marijuana roach in the center console. Additionally, as another officer was shining a flashlight in the truck attempting to help Dep. Blakely locate the roach, Dep. Blakely saw a packet containing a white substance that, based on his training and experience, he believed to be methamphetamine on the floorboard on the driver's side. During Dep. Blakely's search of the truck, Sheriff Mosher joined the other three officers in the driveway where they were calmly talking with Defendant. In total, approximately three to five minutes passed between the officers' first encounter with Defendant and the discovery of the gun, drugs, and money. Shortly after Dep. Blakely discovered the packet containing the white substance on the floorboard, Defendant was arrested.

## II. Conclusions of Law

Defendant moves to suppress the statements he made when law enforcement approached him and any physical evidence derived therefrom, arguing that Defendant was subject to a custodial interrogation for which *Miranda* warnings were required and not given. Specifically, Defendant contends that the encounter between Defendant and the officers was not consensual; that officers did not have reasonable suspicion to conduct an investigatory stop; and that the nature and circumstances of this encounter were such that Defendant was in custody and law enforcement officers were required to advise him of his *Miranda* rights. Conversely, the Government contends that the encounter between Defendant and the officers was consensual, thus Defendant was not detained. Additionally, the Government argues that, even assuming that the encounter did rise to the level of a detention, officers had the requisite reasonable suspicion to conduct an investigatory stop that did not require a *Miranda* warning. The Court takes up the parties' arguments below.

"[W]henever a police officer accosts an individual and restrains his freedom to walk away, he has 'seized' that person" and the Fourth Amendment is implicated. *Terry v. Ohio*, 392 U.S. 1, 16 (1968). However, "[l]aw enforcement officers do not violate the Fourth Amendment's prohibition of unreasonable seizures merely by approaching individuals on the street or in other public places and putting questions to them if they are willing to listen." *United States v. Drayton*, 536 U.S. 194, 200 (2002). "Mere police questioning does not constitute a seizure, and so long as a reasonable person would feel free to disregard the police and go about his business, the encounter is consensual." *United States v. Vera*, 457 F.3d 831, 834 (8th Cir. 2006) (internal quotations and marks omitted).

In this case, the evidence shows that Defendant was not initially detained. The encounter between the officers and Defendant was cordial and calm. Officers walked up the driveway to speak with Defendant. Though they were in tactical gear, their weapons were holstered. Additionally, the officers and Defendant were also quite familiar with one another, so much so that the officers knew Defendant's nickname and Chief Deputy Simmons greeted him. Given the circumstances at that time, Defendant could have disregarded the officers and continued going about his business. Therefore, the initial encounter was consensual and Defendant was not detained then.

However, at the point when Dep. Blakely frisked Defendant, Defendant was detained; yet, his Fourth Amendment rights were not violated. It is well-established that police officers are permitted to "conduct a brief, investigatory stop of an individual if the officer reasonably suspects that the individual is involved in criminal activity." *United States v. Lawhorn*, 735 F.3d 817, 820 (8th Cir. 2013). Law enforcement officers must have a "particularized and objective basis" for suspecting criminal activity, which "may be based on an informant's tip where the tip

5

is both reliable and corroborated." *Id.* In determining whether law enforcement had reasonable suspicion to conduct an investigatory stop, courts examine the totality of the circumstances. *Id.* "During an investigative stop, officers should employ the least intrusive means of detention and investigation, in terms of scope and duration, that are reasonably necessary to achieve the purpose of the stop." *United States v. Donnelly*, 475 F.3d 946, 953 (8th Cir. 2007) (internal quotations and marks omitted). Additionally, "[a]n investigative detention may turn into an arrest if it lasts for an unreasonably long time or if officers use unreasonable force." *Id.*

In this case, law enforcement officers had sufficient reasonable suspicion to briefly stop and detain Defendant. Officers had information from a reliable informant that Defendant was selling drugs out of his truck. The informant had worked with these officers for years, wearing wires to drug transactions and providing them with good information about drug trafficking in their jurisdiction. In this instance, the informant indicated that he had seen Defendant selling drugs at Defendant's father's house and generally "rolling around selling drugs out of his truck" in late 2014, which provided the basis for the warrant. The informant also provided a description of Defendant's truck. This information was further corroborated by officers based on their own knowledge of Defendant and his association with people who had been involved in trafficking methamphetamine. As a result, VSCO officers had sufficient reasonable suspicion to stop and pat down Defendant.

Moreover, the totality of the circumstances show that VCSO officers "conduct[ed] a reasonably limited investigation to confirm or dispel [their] suspicion of illegal drug trafficking." *United States v. Pelayo-Ruelas*, 345 F.3d 589, 593 (8th Cir. 2003). This limited investigation included asking questions of Defendant, to which he responded and ultimately gave officers

6

probable cause to search his vehicle.[4]  *See United States v. Lopez-Mendoza*, 601 F.3d 861, 865 (8th Cir. 2010) ("Even when officers have no basis for suspecting a particular individual, they may generally ask the individual questions[.]").  Additionally, the length of the detention was reasonable, as at most five minutes passed between the time Defendant was initially detained and frisked and the time when Dep. Blakely found methamphetamine in Defendant's truck.  *See United States v. Bloomfield*, 40 F.3d 910, 917 (8th Cir. 1994) (no rigid time limit on what constitutes a "reasonable" length of detention for a *Terry* stop, though time is an important factor in analyzing such a stop).

The evidence further shows that the VCSO officers approached Defendant with cordial familiarity and never drew their weapons.  They spoke calmly with Defendant before and after Dep. Blakely frisked him, and did not restrain him until Dep. Blakely found methamphetamine in his truck and had probable cause to make an arrest.  Overall, the circumstances of this interaction show that officers employed the "least intrusive means of detention and investigation," and thus conducted a valid investigatory stop.  *Donnelly*, 475 F.3d at 953.  Moreover, the VCSO officers' "conduct of the *Terry* stop did not curtail [Defendant]'s freedom to the degree associated with a formal arrest" and therefore they were not required to give *Miranda* warnings.  *Pelayo-Ruelas*, 345 F.3d at 592-93 (rejecting the "broad contention that a person is in custody for *Miranda* purposes whenever a reasonable person would not feel free to leave," and stating that though "[o]ne is not free to leave a *Terry* stop until the completion of a reasonably brief investigation, which may include limited questioning[,] . . . most *Terry* stops do

---

[4] Defendant does not contest that this statement in and of itself gave officers probable cause to search his vehicle. *See United States v. Vore*, 743 F.3d 1175, 1179 (8th Cir. 2014) ("Probable cause sufficient to justify a search exists where, in the totality of the circumstances, there is a fair probability that contraband or evidence of a crime will be found in a particular place.") (quotation omitted).  As noted, he contends this statement and the fruits therefrom should be suppressed because he was in custody when the officers approached him and should have been informed of his *Miranda* rights at that time.

7

not trigger the detainee's *Miranda* rights."). Therefore, the Court concludes that Defendant's constitutional rights were not violated and thus his statements and the fruits derived therefrom need not be suppressed. As such, Defendant's Motion should be denied.

### III. Recommendation

Based on the foregoing discussion, it is hereby **RECOMMENDED** that Defendant's Motion to Suppress Physical Evidence and Statements, (Doc. 18), be **DENIED**.

/s/ *David P. Rush*
DAVID P. RUSH
UNITED STATES MAGISTRATE JUDGE

DATE: July 5, 2016